**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DEMOCRACY DEFENDERS FUND<br>600 Pennsylvania Avenue SE, #15180<br>Washington, DC 20003,<br><br>and<br><br>LAWYERS' COMMITTEE FOR CIVIL RIGHTS<br>UNDER LAW<br>1500 K Street NW<br>Washington, DC 20005,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY<br>245 Murray Lane SW<br>Washington, DC 20528,<br><br>and<br><br>U.S. IMMIGRATION & CUSTOMS<br>ENFORCEMENT<br>111 Massachusetts Avenue NW<br>Washington, DC 20529,<br><br>*Defendants*. | Civil Action No. 1:26-cv-01106 |

**<u>COMPLAINT</u>**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Plaintiffs Democracy Defenders Fund ("DDF") and Lawyers' Committee for Civil Rights Under

Law ("Lawyers' Committee" or "LC") (collectively, "Plaintiffs") seek injunctive and other

appropriate relief for the processing and release of agency records requested by Plaintiffs from

Defendants the United States Department of Homeland Security ("DHS") and United States

Immigration and Customs Enforcement ("ICE") on January 30, 2026 and January 12, 2026, respectively.

2. Plaintiffs requested records that include information of great national significance—specifically, records regarding the government's widespread use of privacy-invasive mobile applications, Mobile Fortify and Mobile Identify.

3. Public reporting indicates that Mobile Fortify and Mobile Identify permit federal, state, and local authorities to collect individuals' biometric information, use facial recognition technology on individuals to find information about individuals and their family members, and make conclusive determinations regarding individuals' citizenship regardless of contrary evidence.

4. The federal government reportedly has used Mobile Fortify more than 100,000 times to collect biometric data from individuals in the United States, including from individuals engaging in First Amendment protected activity.

5. The government's continued use of Mobile Fortify and Mobile Identify affects the privacy rights, civil rights, and civil liberties of U.S. citizens and noncitizens alike.

6. Under FOIA, Plaintiffs are entitled to all requested records that are not exempt from FOIA's disclosure requirements.

7. Under 5 U.S.C. § 552(a)(6)(A)(i), agencies must make a determination within twenty business days after receipt of a request.

8. More than two months have passed since DHS and ICE received Plaintiffs' requests, but neither has complied with that deadline.

9. Plaintiffs are entitled to relief under 5 U.S.C. § 552 *et seq.,* ordering DHS and ICE to conduct searches and produce all non-exempt records responsive to Plaintiffs' FOIA requests.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii) and 28 U.S.C. §§ 1331, 2201, and 2202.

11.    This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

12.    This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

13.    This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

14.    Plaintiff DDF is a nonpartisan, non-profit section 501(c)(3) organization committed to defending and strengthening democracy while ensuring that all Americans can freely exercise their fundamental civil rights by defending the rule of law, fighting corruption, and protecting elections. DDF strategically uses FOIA and public records requests to shine a light on abuses of power by gathering and analyzing information, including through FOIA requests. DDF's public dissemination of information and media outreach are extensive, allowing the organization to connect with a vast and diverse audience across various platforms, making it uniquely positioned to effectively inform the public about information of national significance. The organization is incorporated under the laws of the District of Columbia.

15.    Plaintiff LC, formed in 1963 at the request of President Kennedy, is a nonpartisan, nonprofit organization using legal advocacy to pursue racial justice. LC fights inside and outside the courts to ensure that Black people and other people of color have the voice, opportunity, and power to make the promises of American democracy real. LC's Digital Justice Initiative works at

3

the intersection of racial justice, technology, data, and privacy. Among other things, the Initiative combats online hate and discrimination and surveillance practices targeting Black Americans and other communities of color.

16. Defendant Department of Homeland Security is an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C. DHS has possession, custody, and control of records that Plaintiffs seek.

17. Defendant Immigration and Customs Enforcement is a department of the Executive Branch of the United States Government, and an "agency" of the federal government within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. ICE has possession, custody, and control of records that Plaintiff DDF seeks.

## FACTS

### *Mobile Fortify*

18. In June 2025, 404 Media reported that ICE had begun using a facial recognition mobile application called Mobile Fortify in the field.

19. Public reporting states that Mobile Fortify works by allowing ICE agents to point phones at individuals and match individuals' faces against hundreds of millions of records in various government databases.[1] If the app finds a match, it displays information about that individual and their family members.[2]

---

[1] Joseph Cox, *DHS Gives Local Cops a Facial Recognition App to Find Immigrants*, 404 MEDIA (Nov. 4, 2025), https://www.404media.co/cbp-quietly-launches-face-scanning-app-for-local-cops-to-do-immigration-enforcement/; Joseph Cox, *Inside ICE's Supercharged Facial Recognition App of 200 Million Images*, 404 Media (Jul. 17, 2025), https://www.404media.co/inside-ices-supercharged-facial-recognition-app-of-200-million-images/; Maddy Varner & Dell Cameron, *Here's the Company That Sold DHS ICE's Notorious Face Recognition App*, WIRED (Jan. 28, 2026), https://www.wired.com/story/mobile-fortify-face-recognition-nec-ice-cbp/.

[2] Joseph Cox, *Inside ICE's Supercharged Facial Recognition App of 200 Million Images*, 404

20. ICE agents also reportedly can use Mobile Fortify to take photos or fingerprints for future use—regardless of whether the app identifies an individual—which are then stored for 15 years, along with geolocation data (*i.e.*, data about the exact location where the image was taken).[3] In addition, Mobile Fortify can capture contactless fingerprints and photographs of identity documents and extract text from identity documents for additional checks.[4]

21. ICE officials reportedly have stated they consider an identity match in Mobile Fortify to be a definitive determination of a person's citizenship status and that an ICE officer may ignore evidence of American citizenship—including a birth certificate—if the app contradicts that evidence.[5]

22. According to media reports, individuals cannot refuse to be scanned by the app.[6]

23. Agents are using Mobile Fortify on individuals across the United States. By January 4, 2026, Mobile Fortify had reportedly been used more than 100,000 times by federal agents to collect biometric data.[7]

---

Media (Jul. 17, 2025), https://www.404media.co/inside-ices-supercharged-facial-recognition-app-of-200-million-images/; Moustafa Bayoumi, *ICE's surveillance app is a techno-authoritarian nightmare*, THE GUARDIAN (Jan. 30, 2026), https://www.theguardian.com/commentisfree/2026/jan/30/ice-surveillance-app-mobile-fortify-authoritarian.

[3] Joseph Cox, *You Can't Refuse To Be Scanned by ICE's Facial Recognition App, DHS Document Says*, 404 Media (Oct. 31, 2025), https://www.404media.co/you-cant-refuse-to-be-scanned-by-ices-facial-recognition-app-dhs-document-says/

[4] Maddy Varner & Dell Cameron, *Here's the Company That Sold DHS ICE's Notorious Face Recognition App*, WIRED (Jan. 28, 2026), https://www.wired.com/story/mobile-fortify-face-recognition-nec-ice-cbp/.

[5] Joseph Cox, *ICE and CBP Agents Are Scanning Peoples' Faces on the Street To Verify Citizenship*, 404 Media (Oct. 29, 2025), https://www.404media.co/ice-and-cbp-agents-are-scanning-peoples-faces-on-the-street-to-verify-citizenship/.

[6] *Id.*

[7] Michelle Hackman, et. al, *ICE Is Using Facial-Recognition Technology to Quickly Arrest People*, WALL STREET JOURNAL (Jan. 4, 2025), https://www.wsj.com/politics/policy/ice-facial-recognition-app-mobile-fortify-dfdd00bf.

24. According to media reports, ICE agents have used Mobile Fortify to collect biometric data on U.S. citizens as well as noncitizens.[8]

25. There are also reported instances of Mobile Fortify misidentifying individuals.[9]

26. This widespread collection of biometric information is especially concerning in light of public statements from federal officials suggesting that such data could be used to target individuals based on their First Amendment activity. For example, White House Border Czar Tom Homan stated that the administration intends to create a "database" of people deemed to be interfering with ICE operations.[10] Other reporting based on interviews with national security officials states that the government is using information gathered in the field to create watchlists of anti-government protestors and others labeled "domestic terrorists."[11]

27. ICE has scanned the faces of peaceful protestors and told the protesters that the resulting data would be used to place them on a list of domestic terrorists.[12] One woman in

---

[8] *See, e.g.*, Jesus Baltazar, *Residents in Sunland Park 'racially profiled' by ICE, Border Patrol*, KTSM (Feb. 12, 2025), https://www.ktsm.com/news/residents-in-sunland-park-racially-profiled-by-ice-border-patrol/; Joseph Cox, *ICE and CBP Agents Are Scanning Peoples' Faces on the Street To Verify Citizenship*, 404 MEDIA (Oct. 29, 2025), https://www.404media.co/ice-and-cbp-agents-are-scanning-peoples-faces-on-the-street-to-verify-citizenship/; Jude Joffe-Block, *Immigration agents have new technology to identify and track people*, NPR (Nov. 8, 2025), https://www.npr.org/2025/11/08/nx-s1-5585691/ice-facial-recognition-immigration-tracking-spyware.

[9] Joseph Cox, *ICE's Facial Recognition App Misidentified a Woman. Twice*, 404 Media (Jan. 19, 2026), https://www.404media.co/ices-facial-recognition-app-misidentified-a-woman-twice/.

[10] Lee Moran, *Trump Border Czar Reveals Chilling Plan to Make Anti-ICE Protesters 'Famous'*, HUFFPOST (January 16, 2026), https://www.huffingtonpost.co.uk/entry/tom-homan-ice-protesters_n_6969f708e4b018dc941d4929; *see also Hilton v. Noem*, No. 2:26-cv-00092 (D. Me. Mar. 16, 2026) (where Plaintiffs sued after ICE officials allegedly told protestors they would be added to a domestic terrorism database).

[11] Ken Klippenstein, *Exclusive: ICE's Secret Watchlists of Americans* (Jan. 28, 2026), https://www.kenklippenstein.com/p/ices-secret-watchlists-of-americans.

[12] Emily Allen, *Maine ICE observers say agent threatened to put them on 'domestic terrorist' watchlist,* PORTLAND PRESS HERALD (Feb. 2, 2026), https://www.pressherald.com/2026/02/23/maine-ice-observers-sue-say-agents-threatened-to-add-them-to-a-database-of-domestic-terrorists-2/

6

Minnesota said in a court declaration that her Global Entry and TSA PreCheck privileges were revoked after a federal agent told her she was being recorded with facial recognition technology during a protest.[13]

28.    The federal government reportedly provided local law enforcement with access to an app called Mobile Identify that works similarly to Mobile Fortify.[14]

29.    Plaintiffs filed FOIA requests (collectively, "Plaintiffs' Requests") to shed light on the use of Mobile Fortify to collect biometric data, including how such data is being stored and used by Defendants.

### *Lawyers' Committee FOIA*

30.    On January 12, 2026, Lawyers' Committee filed its FOIA request via SecureRelease Portal ("LC's Request") with ICE seeking the following records from January 20, 2025, through the date of the search:

> 1.    All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms, including Slack, Signal, and Microsoft Teams) sent or received by the individuals listed below (A) containing the term "Mobile Fortify" or "Mobile Identify".
>> A.    Agency officials:
>>> 1.    Acting Director Todd Lyons
>>> 2.    Former Acting Director Caleb Vitello
>>> 3.    Deputy Director Madison Sheahan
>>> 4.    Chief of Staff Jon Feere

---

[13] Maddy Varner & Dell Cameron, *Here's the Company That Sold DHS ICE's Notorious Face Recognition App*, WIRED (Jan. 28, 2026), https://www.wired.com/story/mobile-fortify-face-recognition-nec-ice-cbp/.

[14] Joseph Cox, *DHS Gives Local Cops a Facial Recognition App To Find Immigrants*, 404 MEDIA (Nov. 4, 2025), https://www.404media.co/cbp-quietly-launches-face-scanning-app-for-local-cops-to-do-immigration-enforcement/.

5. Acting Executive Associate Director for Enforcement and Removal Operations Marcos Charles

6. Acting Executive Associate Director for Homeland Security Investigations Derek Gordon

7. Deputy Assistant Director for Homeland Security Investigations Selwyn Smith

8. Executive Associate Director, Management and Administration Susan C. Dunbar

9. Associate Director, Office of Professional Responsibility Jennifer M. Fenton

10. Principal Legal Advisor Charles Wall

11. Acting Chief Financial Officer Jose Fabre

12. Acting Field Office Director for Enforcement and Removal Operations Robert Cerna

13. Assistant Field Office Director for Enforcement and Removal Operations Carlos Cisneros

2. All electronic communications (as defined above) between the agency officials listed above and any local or state law enforcement agencies or officers concerning the use of Mobile Identify.

3. All final guidance, policy or enforcement memoranda, directives, field guides, and instructions created by ICE related to the use of the Mobile Fortify and Mobile Identify applications.

4. Records sufficient to show the number of instances in which Mobile Fortify has been employed by ICE officers from January 20, 2025, to the date of the search. Records that would likely show this figure include, but are not limited to, tracking data by those responsible for its deployment and summary reports provided to ICE leadership regarding the use of this technology.

5. All final guidance, policy or enforcement memoranda, or directives created by ICE related to the use of the Customs and Border Patrol's ("CBP") Traveler Verification Service for immigration enforcement and removal operations.

6. All final guidance, policy or enforcement memoranda, or directives created by ICE related to the use of CBP's Unified

8

Passenger Login System for immigration enforcement and removal operations.

7. LC requested a fee waiver under 5 U.S.C. § 552(a)(4)(A).

8. On February 4, 2026, ICE sent an email acknowledging receipt of LC's Request, which was assigned Case Number 2026-ICFO-11310. ICE invoked, under 5 U.S.C. § 552(a)(6), a 10-day extension of its original February 10, 2026 deadline to respond. The 10-day extension period expired on February 25, 2026.

9. ICE has not responded substantively to LC's Request, and the status of LC's Request on SecureRelease says "Searching for Records."

### *DDF FOIA*

10. On January 30, 2026, DDF sent its FOIA request ("DDF's Request") electronically (as instructed by the Defendants' FOIA offices' websites) to the DHS Privacy Office, ICE, and CBP seeking the following records:

1. All records that related to the use of *Mobile Fortify* Facial Recognition Application ("Facial Recognition App" or "the App"), including, but not limited to:
   a. Any policies, procedures, manuals, or other forms of guidance concerning the use of the App by employees or contractors of DHS, including any guidance concerning the appropriate use of the App in the field, privacy and data security protocols, and rules regarding use of data obtained through the App.
   b. Any legal analysis or justification for use of the App, including any analysis provided by the Department of Homeland Security Office of General Counsel and the Department of Homeland Security Privacy Office (or any ICE component legal offices) authorizing the use of the App or analyzing the application of the U.S. Constitution or any statutory provision to use of the App.

9

c.  All final and draft Privacy Threshold Analyses, Privacy Impact Assessments, System of Records Notices, or Authorization to Operates that discuss the App.

d.  Any communications, including any emails, Teams, instant messages[15] to or from any employee or contractor of Immigration Customs Enforcement ("ICE") Enforcement and Removal Operations concerning the App.

e.  Any communications with the DHS Privacy Office, or component privacy office, regarding the use of the App.

f.  All training materials that discuss use of the App.

g.  Any communications, documents, or discussions that describe or analyze the database or databases used to analyze data obtained with the App.

h.  Any communications, documents, or discussions that describe or analyze whether individuals are or should be given an opportunity to object or consent to the use of the App to capture images of their face.

i.  All communications, documents, or discussions that describe or analyze the number of individuals who have had their faces captured by the App or otherwise describe or analyze the extent of use of the App.

j.  All communications, documents, or discussions that describe or analyze the use of the App in relation to U.S. citizens.

k.  All communications, documents, or discussions that describe or analyze any and all uses of the data obtained with the App, including but not limited to whether the data is used to determine a person's immigration or citizenship status and whether that determination is considered definitive.

l.  All communications, documents, or discussions that describe or analyze any incidents in which any individual was detained in any manner based in

---

[15] SMS text, MMS, RCS, Slack, iMessage, Signal, WhatsApp, Telegram, or direct messages on X.com, Truth Social, or similar social media app.

whole or in part on data obtained with the App or a conclusion based in whole or in part on data obtained with the App that was later determined to be erroneous.

m.    All communications, documents, or discussions that describe or analyze the storage of data obtained with the App, including but not limited to where the data is stored, what data is being stored, how it is being secured, how long the data is retained, any protocols concerning storage of the data, and any analyses of the security of the stored data. This should include (but not be limited to) data retention, use, sharing, and deletion policies that were memorialized in any agreement between DHS and the company that distributes/manufactures the App.

n.    All communications, documents, or discussions that describe or analyze the privacy implications of use of the App and/or maintenance of the data obtained with the App.

o.    All communications, documents, or discussions that describe or analyze the basis of DHS's public statement that the use of the App "is governed by established legal authorities and formal privacy oversight, which set strict limits on data access, use, and retention."

p.    All communications, documents, or discussions that describe or analyze any and all training provided to individuals who may use the App.

q.    All contracts, written agreements, or memorandums of agreement or understanding with the company that manages/distributes/produces the App.

r.    All contracts, written agreements, information sharing agreements, or memorandums of agreement or understanding with any other federal, state, or local agency regarding the sharing of data produced by this app.

11.    DDF requested a fee waiver under 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11.

11

12.     DDF also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and DHS' implementing regulations at 6 C.F.R. § 5.5(e)(1)(ii), (iv), all of which require DHS to inform the requester of whether expedited processing will be granted within ten business days of receiving the request. *Id.* at 4–7. Pursuant to FOIA and DHS requirements, 5 U.S.C. § 552(a)(6)(E)(vi), at 6 C.F.R. § 5.5(e)(3), DDF included the requisite, certified statement articulating the basis for its request for expedited processing.

13.     On February 2, 2026, via email, CBP notified DDF that it has assigned number CBP-FO-2026-054882 to the request and that CBP determined that it has no records responsive to DDF's Request.

14.     CBP's assertion that it does not possess any responsive records is contrary to public reporting indicating that CBP databases are linked to the Mobile Fortify application and involved in the processing of data obtained through the application.[16]

15.     On February 5, 2026, via email, DHS Privacy confirmed receipt of DDF's Request and provided a tracking number of 2026-HQFO-01720 ("February 5 Letter"). In the February 5 letter, DHS Privacy granted DDF's request for a fee waiver and denied DDF's request for expedited processing.

16.     Pursuant to 6 C.F.R. § 5.5(c), DHS Privacy also invoked a 10-day extension of the original February 27, 2026 deadline, based on DHS' assertion that the request "seeks documents that will require a thorough and wide-ranging search." The 10-day extension period ended on March 13, 2026. FOIA requires federal agencies to respond to a request for records within twenty

---

[16] Cox, supra note 1; Joseph Cox, *Inside ICE's Supercharged Facial Recognition App of 200 Million Images*, 404 MEDIA (Jul. 17, 2025), https://www.404media.co/inside-ices-supercharged-facial-recognition-app-of-200-million-images/.

business days after receiving a request, 5 U.S.C. § 552(a)(6)(A)(i), in the absence of specified "unusual circumstances," *id.* § 552(a)(6)(B).

17.     On February 27, 2026, DDF emailed DHS, seeking to discuss a timeline for production of records responsive to DDF's request.

18.     On March 9, 2026, DDF called the number included in the February 5 Letter to follow up on DDF's request. DDF left a voicemail requesting a call back.

19.     To date, DDF has not received any response from DHS Privacy indicating whether the agency will comply with the request or the timeframe for any response, nor has DHS Privacy described any "unusual circumstances" per 5 U.S.C. § 552(a)(6)(B) that would require an extension beyond the March 13, 2026 deadline.

20.     To date, ICE has failed to respond to DDF's request.

### *Exhaustion of Administrative Remedies*

21.     To date, ICE has failed to notify LC of any determination regarding LC's Request, produce any documents, or provide any justification for withholding documents. ICE has also failed to demonstrate that the requested records are lawfully exempt from production within the statutory timeline. Additionally, ICE has failed to respond to LC's request for fee waiver within the statutory timeline.

22.      To date, DHS Privacy and ICE have failed to make a determination regarding its DDF's FOIA request, produce any responsive documents, or provide any justification for withholding documents. Additionally, ICE has failed to respond to DDF's request for fee waivers and expedited processing within the statutory timeline.

23. Because DHS and ICE failed to respond to Plaintiffs' FOIA requests within the time period required by law, Plaintiffs have exhausted their administrative remedies and now seek immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSES OF ACTION

### COUNT I (All Plaintiffs and All Defendants)
### Violation of the Freedom of Information Act,  5 U.S.C. § 552(a)(6)(A)(i)
### Violation of Statutory Deadline

24. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

25. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

26. FOIA requires agencies to make a determination regarding a FOIA request within 20 working days after the receipt of that request. 5 U.S.C. § 552(a)(6)(A)(i).

27. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

28. More than two months have passed since Plaintiffs submitted their requests to DHS and ICE, yet the agencies have provided no documents in response to that Request.

29. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted their administrative remedies for their requests, DDF and LC now turn to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

14

30.	By failing to comply with the statutory deadlines, Defendants violated the FOIA.

**COUNT II (All Plaintiffs and All Defendants)**
**Violation of the Freedom of Information Act, 5 U.S.C. § 552**
**Unlawful Withholding of Agency Records**

31.	Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

32.	Defendants have failed to search for records responsive to Plaintiffs' requests.

33.	Defendants' failure to make a determination on or disclose the documents requested within the time frame mandated under FOIA constitutes a denial and a wrongful withholding of records in violation of 5 U.S.C. § 552.

34.	Defendants' conduct amounts to a denial of Plaintiffs' FOIA request. Defendants are frustrating Plaintiffs' efforts to adequately understand and educate the public regarding issues of national significance, including invasive facial recognition tools used to collect biometric information, surveil, and intimidate U.S. citizens and noncitizens in the United States

35.	By failing to release requested records, Defendants violated the FOIA.

**COUNT III (All Plaintiffs and ICE)**
**Violation of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(A)**
**ICE's Failure to Grant Requests for Waiver of Fees**

36.	Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

37.	Plaintiffs timely requested fee waivers for the production of responsive records because they intend to use these records to educate and inform the general public on the federal government's utilization of the Mobile Fortify facial recognition mobile application, and Plaintiffs are non-commercial requesters.

38.    ICE failed to respond to Plaintiffs' requests for fee waiver within the statutory time frame.

39.    Plaintiffs have exhausted the applicable administrative remedies with respect to ICE's wrongful failure to grant a waiver of fees.

40.    By failing to grant a fee waiver, ICE violated the FOIA.

### COUNT IV (DDF and ICE)

**Violation of the Freedom of Information Act, 5 U.S.C. § 552**
**ICE's Failure to Grant Expedited Processing**

41.    Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

42.    By failing to grant DDF's request for expedited processing of Plaintiff's FOIA request concerning matters of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence, 28 C.F.R. § 16.5(e)(1)(iv), and national urgent need to inform the public, 5 U.S.C. § 552(a)(6)(E)(iii), ICE violated the FOIA.

### RELIEF SOUGHT

**WHEREFORE**, Plaintiffs requests that this Court:

(1)    Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA requests;

(2)    Order Defendants to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA requests together with indexes justifying the withholding of any responsive records withheld under claim of exemption;

16

(3)     Enjoin Defendants from continuing to withhold any and all non-exempt records

responsive to Plaintiffs' FOIA requests;

(4)     Order Defendants to grant Plaintiffs' fee waiver requests in connection with their

FOIA requests;

(5)     Provide for expedited proceedings in this action;

(6)     Award Plaintiffs the costs of filing and prosecuting this action, including reasonable

attorneys' fees and other litigation costs reasonably incurred in this action, pursuant

to 5 U.S.C. § 552(a)(4)(E); and

(7)     Grant Plaintiffs such other relief as the Court deems just and proper.

Dated:      April 1, 2026

Respectfully submitted,

/s/ Harold Craig Becker
Harold Craig Becker, D.C. Bar No. 371239
Stephen A. Jonas D.C. Bar No. 90037069
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
Tel: (202) 594-9958
craig@democracydefenders.org
steve@democracydefenders.org


/s/ Ginger P. McCall
Ginger P. McCall, D.C. Bar No. 1001104
Kevin H. Bell, D.C. Bar No. 90015600
FREE INFORMATION GROUP, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
Tel: 202-946-3642
ginger@freeinformationgroup.com
kevin@freeinformationgroup.com

\/s/ Leah E. Frazier
Edward G. Caspar, D.C. Bar No. 1644168
Leah E. Frazier, D.C. Bar No. 492540
Marc P. Epstein, D.C. Bar No. 90003967
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street N.W. Suite 900
Washington, D.C. 20005
Tel: 202-662-8390
ecaspar@lawyerscommittee.org
lfrazier@lawyerscommittee.org
mepstein@lawyerscommittee.org

*Attorneys for Plaintiffs*

17